IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| DAVON STEPHENS, | ) | Civil Action No.: 2:24-6427-DCC-MGB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **COMPLAINT** |
| SOUTH CAROLINA DEPARTMENT OF JUVENILE JUSTICE, KADIJAH HOLLOMAN, JOHN DOE and JANE DOE, | ) ) ) ) | |
| | ) | |
| Defendants. | | |

Plaintiff, by and through his undersigned counsel, does hereby complain of Defendant and respectfully alleges as follows:

1. Davon Stephens, (hereinafter "Plaintiff"), was, at all times relevant hereto a citizen and resident of Richland County, South Carolina.

2. Plaintiff was in the custody of Defendant at the Broad River Road Campus ("BRRC") in Richland County, South Carolina between February 2022 and May 2024.

3. Defendant South Carolina Department of Juvenile Justice (hereinafter "SCDJJ" or "Defendant") is the state agency responsible for providing custodial care and rehabilitation to children who are incarcerated, on probation or parole, or in community placement for a criminal status offense. *See* S.C. Code Ann. §§ 63-19-310, 63-19-350. At all times herein mentioned in this lawsuit, Defendant SCDJJ acted and carried on its business by and through its agents, servants and/or employees at its various locations and is subject to suit pursuant to the Section 1983 of Title 42 of the United States Code (42 U.S.C. § 1983).

4.     Defendant Kadijah Holloman was, at all times relevant hereto a citizen and resident of Richland County, South Carolina.

5.     Defendants John Doe and Jane Doe are employees of SCDJJ and are place-holder names until their identities may be ascertained through discovery.

6.     The acts and omissions of Defendants complained of herein occurred in Richland County, South Carolina.

7.     The parties hereto, subject matter hereof, and all matters hereinafter alleged are within the jurisdiction of this Court and this Court is the proper venue for this action.

## JURISDICTION AND VENUE

8.     This action arises under the Eighth Amendment to the United States Constitution; the Fourteenth Amendments to the United States Constitution; the Prison Rape Elimination Act, 34 U.S.C. § 30301 *et seq* ("PREA"); and the Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997 *et seq* ("CRIPA").

9.     Plaintiff's Eighth and Fourteenth Amendments claims for relief are actionable under 42 U.S.C. § 1983, which authorizes actions to redress the deprivation under color of state law of rights, privileges, and immunities secured by the Constitution and laws of the United States and under 42 U.S. Code § 1988, which allows the prevailing party for reasonable attorney's fees.

10.     This court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 2201, and 2202, as well as 42 U.S.C. § 1983.

11.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims brought by Plaintiffs have occurred in the District of South Carolina and Defendants are located in the District.

12. Venue is proper in the Columbia division under Local Rule 3.01 because a substantial portion of the events or omissions giving rise to the claims occurred in this division.

## FACTUAL BACKGROUND

13. South Carolina's juvenile justice system is operationally and philosophically distinct from the adult criminal justice system. Under South Carolina law, SCDJJ is responsible for "providing or arranging for necessary services *leading to the rehabilitation*" of the youth in its custody. S.C. Code Ann. § 63-19-350(7) (emphasis added). "The Juvenile Court is theoretically engaged in determining the needs of the child and of society rather than adjudicating criminal conduct. The objectives are to provide measures of guidance and rehabilitation for the child and protection for society, not to fix criminal responsibility, guilt and punishment." *Alexander S. By and Through Bowers v. Boyd*, 876 F. Supp. 773, 796 n.42 (D.S.C. 1995) (citing *Kent v. United States*, 383 U.S. 541, 554-55 (1966)). Accordingly, the juvenile system's principal purpose is to manage youth under a strategy of redirection and rehabilitation, rather than punishment.

14. SCDJJ was established to provide "custodial care and rehabilitation" to children in South Carolina. On its website, DJJ claims to "operate[] its own accredited school district, help[] youth pursue career and workforce development opportunities, show[] youth how to make a positive impact on their local communities, and provide[] rehabilitative and recreational services tailored to the individual needs of each young person under agency supervision."

15. SCDJJ is charged with housing and rehabilitating wayward juveniles in South Carolina between the ages of 12 and 18.

16. Juveniles' physical and mental vulnerabilities increase the need for stronger

protections in correctional facilities. Juveniles are developmentally different from adults and, as such, they require heightened specialized care and treatment by well-trained staff. See *Roper v. Simmons*, 543 U.S. 551, 569 (2005) (asserting that juveniles are different from adults because youth lack maturity and have an underdeveloped sense of responsibility); see also *Graham v. Florida*, 560 U.S. 48, 68 (2010) (acknowledging psychological differences between youth and adults).

17. CRIPA requires prisoners to have similar constitutional safeguards as civilians. See § 1997(a) (articulating that prisoners are endowed with constitutional rights and cannot be subjected to unlawful confinement conditions). These protections also extend to juveniles in correctional facilities. See § 1997(a)(1)(B) (stating that juveniles held awaiting trial, residing in facilities to receive care or treatment, or any other institution, excluding residential facilities, are protected under this Act).

18. PREA protects prisoners against sexual abuse and sexual harassment. See §§ 30302-30309 (asserting that adults and juveniles deserve protections from sexual abuse in prisons). PREA standards are not procedural recommendations; they are mandated through federal law. See 34 U.S.C. § 30307(a)(4), (c)(2)(A) (2017) (outlining that each state is required to adopt and be in full compliance with PREA national standards).

19. PREA standards for juvenile facilities are similar to the standards applied in adult prisons and jails. See § 30309(7) (stating that any local jail, police lockup, or juvenile facility used for the custody or care of juvenile inmates is considered a "prison" under PREA).

20. PREA standards explicitly state that there is "zero tolerance of sexual abuse and sexual harassment," especially in juvenile facilities. See 28 C.F.R. § 115.311(a) (2012) (stating that sexual abuse in juvenile facilities is prohibited and an agency's approach

must be aimed at preventing, detecting, and responding to conduct)

21. PREA standards also require that supervising officers properly oversee detention facilities. See § 115.313(a), (d) (2012) (indicating that supervisors need to provide appropriate monitoring of staff members and implement video recording to assure that juveniles are not subjected to sexual harm).

22. Employees are required to actively prevent, detect, and respond to sexual abuse. See § 115.311(a) (indicating that an employee's main role is to ensure the safety of a juvenile inmate).

23. Juveniles deserve, and are entitled to, constitutional safeguards. See 34 U.S.C. § 30302(3), (7) (2017) (asserting that juveniles have special protections and facilities must ensure that these constitutional safeguards are not violated).

24. Juveniles have an increased vulnerability to sexual abuse, and it is the custodian's duty to ensure their safety and health. See § 30301(5) (recognizing the importance of having adequately trained prison staff to prevent and report inmate sexual assaults).

25. Juveniles in custody at BRRC, including Plaintiff, possess a clearly recognized liberty interest to remain free from unreasonable threats to their physical safety.

26. Juveniles in custody at BRRC, including Plaintiff, possess a clearly recognized liberty interest to remain free sexual harassment and sexual abuse.

27. During his incarceration at SCDJJ the Plaintiff was sexually harassed and abused by Defendant Kadijah Holloman.

28. Defendants SCDJJ, John Doe, and Jane Doe had knowledge of Ms. Holloman's prior sexually abusive conducts towards the Plaintiff and other juveniles at SCDJJ.

29. Defendant SCDJJ was aware of its failure to meet PREA Standards. In 2017 the

South Carolina Legislative Audit Council ("LAC") conducted an audit of SCDJJ facilities. The report highlighted the fact that SCDJJ did not meet PREA standards. 2017 LAC Report Summary, at 17-20. https://lac.sc.gov/sites/lac/files/Documents/Legislative%20Audit%20Council/Reports/A-K/DJJ.pdf. In 2020, the United States Department of Justice ("DOJ") released a report and notice detailing numerous, specific, and repeated violations of the Fourteenth Amendment at BRRC. 2020 Notice Regarding Investigation of South Carolina Broad River Road Complex. DOJ Notice, https://www.justice.gov/opa/press-release/file/1245181/dl. In their Complaint that followed, DOJ stated that "[i]nadequate staffing and supervision contribute to the risk of harm to children" and that "[t]he United States, pursuant to an investigation of BRRC, has concluded that the Department of Juvenile Justice, through its acts and omissions, engages in a pattern or practice of conduct that violates the constitutional and statutory rights of youth at BRRC." DOJ Complaint, at 4. https://www.justice.gov/opa/press-release/file/1494666/dl. In 2021, Diversified Correctional Services, LLC conducted a PREA Audit of the BRRC facility. At that point they found concerns in the following areas: Living Units Staff to Youth Ratios; Resident Reporting of PREA (Grievance Boxes); Living Units Blind Spots; Major Graffiti/writing on the walls and ceiling (gang related); Unsecure doors; Key Control, and Sanitation. Adam T. Barnett, *Prison Rape Elimination Act Audit Report* (Jan. 17, 2021) ("2021 PREA Audit") at 23, https://djj.sc.gov/sites/djj/files/Documents/PREA%20PDFs/BRRC%202020%20Final%20PREA%20Report.pdf.

30.     Defendant SCDJJ has unsuccessfully maintained staff ratios outlined in PREA (see § 115.313(c) (stating that staff ratios should be at a minimum of 1:8 during the day

and 1:16 at night to ensure proper supervision of juvenile residents). 2021 PREA Audit, at 23. As of March of 2023, DJJ reported 82 vacant security posts at BRRC (filled security posts at 58%).

31. Defendants SCDJJ, John Doe, and Jane Doe failed to keep its facilities safe and failed to protect youth from suffering from sexual violence at the hands of its staff, despite the fact that they were aware of these instances of violence (during the first quarter of 2021, DJJ facilities self-reported 15 inappropriate sexual conduct incidents).

32. Defendant SCDJJ failed to provide PREA training to its staff. 2021 PREA Audit, at 25.

33. Defendants SCDJJ, John Doe, and Joe Doe failed to appropriately supervise Ms. Holloman.

34. Defendant SCDJJ's failures to meet minimum standards set forth by federal law, South Carolina law and Defendant's own policies and procedures are not the result of inadequate funding; according to the LAC's 2017 and 2021 reports, there is ample funding for SCDJJ to solve all the harm complained of herein. 2017 LAC Report Summary, https://lac.sc.gov/sites/lac/files/Documents/Legislative%20Audit%20Council/Reports/A-K/DJJ_Summary.pdf; 2021 LAC Report Summary, https://lac.sc.gov/sites/lac/files/Documents/Legislative%20Audit%20Council/Reports/A-K/DJJ_Summary-2021.pdf.

35. Defendant SCDJJ possesses the ability and means to solve the harm complained of herein but fails and refuses to do so.

### Sexual Harassment and Sexual Abuse
### Holloman, SCDJJ, Doe, Doe

36. Plaintiff incorporates by reference all previous paragraphs above as if repeated herein verbatim.

37. On or about the month of February 2024, Plaintiff was incarcerated at the BRRC where he was sexually harassed and sexually assaulted by a SCDJJ employee, Kadijah Holloman, at the BRRC.

38. On several occasions prior to the incident, Ms. Holloman would approach the Plaintiff and pressure him to have sex with him.

39. Plaintiff did not want to engage with Ms. Holloman in any sexual activities.

40. On the day of the incident, Plaintiff was at the Willow T-Home at the BRRC.

41. Ms. Holloman entered Plaintiff's room and performed oral sex. After that, Ms. Holloman had intercourse with the Plaintiff.

42. Plaintiff was severely distraught after the incident, yet he did not report the incident while he was incarcerated at the BRRC for the fear of retaliation.

43. Defendant SCDJJ was made aware of the harm complained of in this Complaint while Plaintiff was in Defendant's custody.

44. On information and belief, prior to the sexual assault on Plaintiff, Defendant was aware of allegations of sexual abuse by Holloman on other juveniles at Defendant's facility(ies).

45. Despite SCDJJ's notice of Holloman's unlawful conduct, it failed to take steps to keep her from harming youth in SCDJJ's custody.

**FOR A FIRST CAUSE OF ACTION**
**<u>Violations of the 14th Amendment</u>**
**42 U.S.C. § 1983**
**Failure to Protect Plaintiff while in SCDJJ Care**
**(Defendant SCDJJ, John Doe, Jane Doe)**

46. The foregoing allegations are re-alleged at if set forth herein verbatim.

47. Prisoners are endowed with equal protections under the Constitution and laws of the United States. See 42 U.S.C. § 1997 (1980) (stating that prisoners like civilized persons in society are awarded similar legal protections).

48. The Fourteenth Amendment to the United States Constitution requires juvenile justice officials to ensure that detained youth are housed in reasonably safe conditions and protected from the aggression of other detained children and staff. *Alexander S.*, 876 F. Supp. at 797-98 (D.S.C. 1995) (citing *Brooks ex rel. Thomas S. v. Flaherty*, 699 F. Supp. 1178, 1200 (W.D.N.C. 1988), *aff'd*, 902 F.2d 250 (4th Cir. 1990)).

49. Plaintiff, while in SCDJJ custody, was not safe from sexual violence.

50. SCDJJ has a pattern, or practice of failing to provide adequate supervision and protection to youth such that they are kept reasonably safe from sexual violence while in SCDJJ's custody in violation of the Fourteenth Amendment.

51. SCDJJ is aware of the ongoing sexual violence at its facilities and the resulting harms to the children in its care. SCDJJ has been put on notice by the 1995 consent decree, the 2017 LAC audit, the 2020 DOJ Notice, the 2021 LAC audit, the 2022 DOJ Complaint, frequent public reporting about the danger and violence in SCDJJ facilities. Yet it remains deliberately indifferent to the ongoing sexual violence.

52. SCDJJ is also aware of many of the causes of the violence, including understaffing. Despite that knowledge, DJJ continues to inadequately staff its facilities.

53. SCDJJ, John Doe, and Jane Doe were aware of prior allegations of sexual abuse by Ms. Holloman against other juveniles in SCDJJ care. Defendants did not terminate Ms. Holloman or take any other corrective action.

54. By subjecting the Plaintiff to sexual violence, Defendants violated his rights under the Fourteenth Amendment.

55. Defendants John Doe and Joan Doe are employed with DJJ and at all times hereto were acting in the course and scope of their employment.

56. Defendants John Doe and Joan Doe are Ms. Holloman's supervising officers.

57. Defendants John Doe and Joan Doe failed to provide appropriate monitoring of Ms. Holloman and prevent the sexual harassment and sexual abuse of the Plaintiff.

58. John Doe and Joan Doe's true names are still unverified and so John Doe and Joan Doe are used as place holders pending discovery.

59. The aforementioned incidents and resulting harm were proximately caused by the intentional, reckless, willful and wanton acts of the individual defendants, in the following particulars:

a. Failing to adhere to local, state, and national standards, policies and procedures including the policies and procedures of SCDJJ;

b. Failing to provide adequate security staff ratios;

c. Failing to provide PREA trainings to staff;

d. Failing to adequately supervise staff;

e. Failing to terminate Ms. Holloman after gaining knowledge about her sexually abusive behavior to other juveniles at BRRC;

f. Failing to protect Plaintiff from suffering from sexual violence;

g. In allowing Ms. Holloman to have access to the Plaintiff after gaining knowledge about her sexually abusive behavior to other juveniles at BRRC.

60. The injuries received by the Plaintiff at the hands of the individual defendants have caused and continue to cause him harm, including, but not limited to, physical harm,

mental anguish, pain and suffering. Therefore, the Plaintiff is entitled to ACTUAL, CONSEQUENTIAL, AND PUNITIVE DAMAGES, costs, and attorney's fees.

**FOR A SECOND CAUSE OF ACTION**
**Violations of the 8th Amendment**
**42 U.S.C. § 1983**
**Cruel and Unusual Punishment**
**(Defendant SCDJJ, Kadijah Holloman, John Doe, Jane Doe)**

61.     The foregoing allegations are re-alleged at if set forth herein verbatim.

62.     This cause of action represents a separate and distinct tort, the damages for which are sought and may be recoverable separately from the foregoing causes of action.

63.     The Eighth Amendment ensures that every individual has a protected right against cruel and unusual punishment. The Eighth Amendment also sets constitutional boundaries on the conditions of imprisonment. See *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997) (stating that the Eighth Amendment provides specific protections for prisoners). These conditions specifically outline protections for prisoners from the use of excess force or mistreatment by prison authorities. See *Williams v. Mussomelli,* 722 F.2d 1130, 1132 (3d Cir. 1983) (recognizing that prison officials are permitted to use force when necessary to maintain discipline but may not use force that violates the standards of decency).

64.     SCDJJ failed to adhere to PREA in its correctional facilities, resulting in a violation of the Plaintiff's Eighth Amendment constitutional right to be protected from cruel and unusual punishment.

65.     On or about February 2024, while Plaintiff was incarcerated at BRRC facility, Defendant Kadijah Holloman sexually harassed the Plaintiff.

66. SCDJJ set the stage for this abuse by, among other things, failing to provide adequate staffing, training, and security.

67. The sexual violence against the Plaintiff by the Defendant Holloman was gross mistreatment by an employee of SCDJJ against the Plaintiff.

68. Defendant Holloman acted with malice, deliberate indifference, willfully, recklessly, and in a grossly negligent manner in forcing Plaintiff to sexual act.

69. Forcing Plaintiff to sexual act while in custody at BRRC is cruel and unusual punishment.

70. The sexual violence against the Plaintiff by the Defendant Holloman took place during Defendant Holloman's normal working hours, on-site at BRRC.

71. The sexual violence against the Plaintiff by the Defendant Holloman took place during Defendant Holloman's normal scope and course of work at BRCC.

72. SCDJJ is liable for Defendant Holloman's conduct at all times relevant hereto.

73. SCDJJ is liable for Defendants John Doe and Jane Doe's conduct at all times relevant hereto.

74. Plaintiff suffered harm as a result of the sexual violence.

75. The injuries received by the Plaintiff at the hands of the individual defendants have caused and continue to cause him harm, including, but not limited to, physical harm, mental anguish, pain and suffering. Therefore, the Plaintiff is entitled to ACTUAL, CONSEQUENTIAL, AND PUNITIVE DAMAGES, costs, and attorney's fees.

**FOR A THIRD CAUSE OF ACTION**
**42 U.S.C. § 1983 – Monell Claim**
**(4th and 14th Amendments, SCDJJ, John Doe, Jane Doe)**

76. The foregoing allegations are re-alleged at if set forth herein verbatim.

77. SCDJJ, by and through Defendants John Doe and Jane Doe, who are authorized

to make and implement final policy decisions for SCDJJ, consciously chose a course of action - to ignore evidence of Holloman's conduct and proclivities toward other youth and the Plaintiff -- from among various alternatives in its response to the reports from other staff that Holloman was sexually abusing youth in SCDJJ's custody.

78.     SCDJJ's policies with respect to the course of conduct it chose to take in failing to protect the Plaintiff were in violation of his rights protected by the Fourth and Fourteenth Amendments in that they a) were unlawful, b) subjected Plaintiff to foreseeable and preventable sexual assault by Holloman.

79.     This unconstitutional policy/course of action chosen by final policymakers for SCDJJ was the proximate cause of the violations of Plaintiff's rights.

## FOR A FOURTH CAUSE OF ACTION
### (Attorney Fees and Costs of Litigation Pursuant to 42 USC 1988)

80.     The foregoing allegations are re-alleged at if set forth herein verbatim.

81.     Pursuant to 42 U.S.C. 1988, Plaintiff seeks an award of reasonable attorney fees and costs of litigation in an amount to be determined by the Court at the conclusion of this matter.

    WHEREFORE, Plaintiff respectfully prays for judgment against Defendants for all actual damages, punitive damages, and consequential damages in an amount to be determined by a jury at the trial of this action as well as attorney fees and costs, and for such other and further relief as this Court deems just and proper.

November 13, 2024  
Charleston, SC

BOLES LAW FIRM, LLC

s/Daniel C. Boles  
Daniel C. Boles, Federal Bar No. 12144  
3870 Leeds Avenue, Suite 104, 29405  
248 E. Washington Street, 29488  
101 McGee Street, 29601  
843.576.5775 *office*  
864.770.7705 *office*  
800.878.5443 *fax*  
dan@boleslawfirmllc.com

Aleksandra B. Chauhan  
3411 Yale Ave.  
Columbia, SC  29205  
803.381.2607 *office*  
aleks22chauhan@gmail.com  
Federal Bar No. 14298